

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JOHN M. DUHÉ, JR., et al. | CIVIL ACTION NO. 06-0905-A (Lead) |
| -vs- | JUDGE DRELL |
| TEXACO INC., et al. | MAGISTRATE JUDGE KIRK |
| – consolidated with – | |
| JOHN M. DUHÉ, JR., et al. | CIVIL ACTION NO. 06-0933-A (Member) |
| -vs- | JUDGE DRELL |
| TEXACO INC., et al. | MAGISTRATE JUDGE KIRK |

# R U L I N G

Before the Court is a Motion to Remand and for Attorney Fees Pursuant to 28 U.S.C. § 1447 (Doc. # 21). Because the arguments underlying the removal do not clearly weigh in favor of a federal forum and because the state court is well equipped to handle the matter, we remand.

## BACKGROUND

The case now before us arises from the alleged underpayment of natural gas royalties during the period from March 23, 1988 to December 31, 1992.[1] The

---

[1] The underlying facts are more fully set forth in Texaco Inc. v. Duhé, 274 F.3d 911 (5th Cir. 2001).

starting date is notable because it marks the confirmation of Texaco's reorganization plan under its Chapter 11 bankruptcy proceedings. The instant matter stems from consolidated state court class actions dating back to 1997 that originally involved claims relating to both oil and natural gas royalties.

Defendant Texaco removed the state court action on July 23, 1997 in Civil Action No. 97-1453, alleging bankruptcy jurisdiction. In support of jurisdiction, Texaco then asserted that plaintiffs' state law claims relating to the underpayment of natural gas royalties appeared to challenge Texaco's pre-bankruptcy conduct. Specifically, Texaco alleged that the sale of natural gas to Louisiana Power & Light (LP&L)—under long-term contracts that were last amended in a 1982 settlement—was subject to federal price regulations under the Natural Gas Policy Act of 1978 (NGPA). In claiming federal court jurisdiction, Texaco asserted "that '[t]o succeed on this claim, [p]laintiffs must establish the imprudence of the 1982 LP&L settlements." (Doc. # 17, Exh. A, p. 16).

This Court disagreed with Texaco's assertion and remanded on October 27, 1997 (Doc. # 17, Exh. A), noting that "[n]owhere in their complaint do plaintiffs allege that the LP&L settlement was improper or that the sales price under the LP&L settlement was too low" (Doc. # 17, Exh. A, p. 16). Significantly, the plaintiffs had previously limited their claims to royalty payments coming due <u>after</u> bankruptcy. Thus, we held the claims did not give rise to bankruptcy jurisdiction

under 28 U.S.C. § 1334(b). In the ensuing state court suit after this first remand, the oil claims were eventually resolved, leaving only the natural gas claims.

While all of the above wrangling was taking place with respect to the removal and remand of the state court suit, Texaco was pursuing a declaratory judgment in a parallel federal action.[2] Texaco ultimately prevailed in the parallel action as to the natural gas claims of some of the plaintiffs.[3] Based on that declaratory judgment, Texaco brought a motion for partial summary judgment in the state court suit on the natural gas claims, which motion was granted by the state court and which resulted in dismissal of existing natural gas claims. However, because several new plaintiffs had been substituted and were not movers in the motion, Texaco brought a second state court motion for partial summary judgment relating to the claims of these new plaintiffs.

In this second motion, Texaco again argued, in defense to the plaintiffs' state law underpayment claims, that the NGPA set the maximum lawful wellhead price for natural gas (and, by extension, the maximum royalty) based on whatever contracts were then in effect for the gas. In state court, the substituted plaintiffs then filed a memorandum in opposition (Doc. # 17, Exh. B) to Texaco's motion in

---

[2] Docket Number 97-1523. Texaco suggests that the parallel federal court declaratory judgment action should determine the result of this motion to remand. We do not believe that the former federal proceeding has any effect on the question of whether or not to remand. This is particularly true since the state court is not only perfectly <u>capable</u> of determining the significance of the parallel federal proceeding but has already rendered a decision <u>favorable to Texaco</u> based on that action—the grant of the motion for partial summary judgment.

[3] See <u>Texaco Inc. v. Duhé</u>, 274 F.3d 911 (5th Cir. 2001).

which they attacked Texaco's affirmative defense.[4] Based on this "defense to a defense" argued in the memorandum in opposition, Texaco again removed, which removal is the subject of this ruling.

Essentially, Texaco's arguments are: (1) that the plaintiffs' "defense to a defense" amounts to a distinct "claim" within the meaning of the Bankruptcy Code, 11 U.S.C. § 101(5); (2) that raising this "claim" is barred by Texaco's 1988 confirmation in the bankruptcy proceeding; and (3) that this Court thus has jurisdiction under 28 U.S.C. § 1334. For the reasons set out below, we are not persuaded that these arguments are valid. Regardless, even if the arguments were valid, we believe that we should remand this case in the interests of justice and out of comity with the state court.

---

[4] The plaintiffs summarize their arguments as follows:

> [T]here are genuine issues of material fact as to whether NGPA Section 105 applied to Plaintiffs' Gas at all, or whether the 30¢ LP&L Contracts set the Section 105 price.
>
> Moreover, royalties are not limited by price caps arising from unreasonable actions by a producer. There are genuine issues of material fact as to whether Texaco acted unreasonably by allocating Plaintiffs' Gas to the LP&L Contracts in 1978 for one-fifth of the market price, which allegedly caused the gas to become subject tot he 30¢ price cap.
>
> There are also genuine issues of material fact as to whether Section 106 set a higher price cap for Plaintiffs' Gas during the time period of the Gas Claim.
>
> Finally, regardless of NGPA, Texaco benefitted from selling Plaintiffs' Gas to LP&L, by avoiding the need to purchase gas at market price to satisfy its own obligations to LP&L. There are genuine issues of material fact as to whether Plaintiffs are entitled to royalty on this economic benefit received by Texaco.

(Doc. # 17, Exh. B, pp. 1-2).

4

## ANALYSIS

28 U.S.C. § 1452, relating to removal under bankruptcy jurisdiction, provides:

> (a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title [28 USCS § 1334].
>
> (b) **The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.** An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title [28 USCS § 158(d), 1291, or 1292] or by the Supreme Court of the United States under section 1254 of this title [28 USCS § 1254].

Id. (emphasis added).

28 U.S.C. § 1334, setting forth, in part, the scope of bankruptcy jurisdiction, provides in relevant part:

> \* \* \*
>
> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
>
> (c) (1) Except with respect to a case under chapter 15 of title 11 [11 USCS §§ 1501 et seq.], **nothing in this section prevents a district**

5

> **court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.**
>
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.
>
> * * *

Id. (emphasis added).

In the instant case, we cannot hear the matter if we lack jurisdiction under § 1334, but even if we have such jurisdiction, we may nevertheless remand on "any equitable ground." Because we base our decision to remand on equitable grounds rather than on jurisdictional grounds, we make no holding on the jurisdictional questions. Nevertheless, we will first touch on some of the thorniest issues raised in this proceeding.

First, we do not believe that the plaintiffs' "defense to a defense" amounts to a claim at all, except in the non-technical sense that it is an assertion. As this Court noted in the October 27, 1997 decision to remand, the plaintiffs have repeatedly and expressly stated that their claims are limited to post-confirmation rights to payment to which they are entitled under state law. This is and always has been the plaintiffs' actual claim. Texaco, on the other hand, was the first to

invoke the NGPA and its own pre-confirmation conduct in its affirmative defense to the plaintiffs' state law claims.

We believe that the issue before us is analogous to the "well-pleaded complaint" rule in the federal question context, "which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987) (citation omitted). Furthermore,

> to support removal, the defendant must locate the basis of federal jurisdiction in those allegations necessary to support the plaintiff's claim, ignoring his own pleadings and petition for removal. A defendant may not remove on the basis of an anticipated or even inevitable federal defense, but instead must show that a federal right is "an element, and an essential one, of the plaintiff's cause of action." Gully v. First Nat'l Bank, 299 U.S. 109, 111, 57 S. Ct. 96, 97, 81 L. Ed. 70 (1936)

Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 366 (5th Cir. 1995).

Here, the plaintiffs' complaint exclusively alleges state law claims for post-confirmation conduct, where the conduct is defined as underpayment of natural gas royalties. Only in Texaco's inevitable affirmative defense is pre-confirmation conduct implicated. Although the question is a close one, we do not believe that the plaintiffs' "defense to a defense" qualifies as a part of their claims. In our adversarial system, a party simply cannot be expected to allow an opposing party

to assert a defense without vigorously attacking it.[5] We do not believe that such an attack qualifies as a "claim" for purposes of triggering removal.

Furthermore, even if we were to accept plaintiffs' "defense to a defense" as a <u>potential</u> claim, we are not certain that it would qualify as a "claim" within the meaning of the Bankruptcy Code, 11 U.S.C. § 101(5). The rights of action for the underpayment of natural gas royalties accrued after Texaco's Chapter 11 confirmation date, and it is not clear that causes of action accruing post-confirmation may be dischargeable "claims" in this situation. <u>See</u>, <u>e.g.</u>, <u>Lemelle v. Universal Mfg. Corp.</u>, 18 F.3d 1268 (5th Cir. 1994) (discussing at least three different methods to determine when a "claim" arises in bankruptcy).

Thus, we are not convinced that we have jurisdiction under 28 U.S.C. § 1334, but we need not even determine whether we do, for we choose to remand on equitable grounds. The state court had this complex suit for several years and proved itself to be abundantly capable of managing it. We have no doubt that the state court is well equipped to handle the complexities of this case. Furthermore, the case should proceed more quickly in the state court, since most of the issues in this case were resolved there, and that court is already familiar with the remaining issues. In the interests of justice and of comity with the state court, the plaintiffs' Motion to Remand will be GRANTED.

---

[5] Texaco's rationale, if applied to the "well-pleaded complaint" rule, would eviscerate it, since plaintiffs would then face an unenviable choice: on the one hand, opposing a federal defense and thus triggering the possibility of removal; and, on the other hand, failing to oppose the federal defense and thus risking loss of the suit. This is absurd.

## MOTION FOR COSTS AND EXPENSES

The plaintiffs have also requested an award of attorney fees and costs resulting from this remand. Such an award is discretionary. The Supreme Court has also said that, absent unusual circumstances, an award of attorney fees on remand is not appropriate when the defendant had an objectively reasonable basis for removal. <u>Martin v. Franklin Capitol Corp.</u>, 546 U.S. 132, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). Here, because the questions relating to bankruptcy jurisdiction and the "defense to a defense" argument are so close, we cannot say that Texaco lacked an objectively reasonable basis for removal. Thus, an award of attorney fees will be DENIED. However, because the plaintiffs prevailed in the remand, the award of costs is appropriate and will be GRANTED.

## CONCLUSION

For the foregoing reasons, it will be ordered that the Plaintiffs' Motion to Remand (Doc. # 21) be GRANTED. It will be further ordered that Plaintiff's Motion for Costs and Expenses (Doc. # 21) be DENIED as to attorney fees and GRANTED as to all costs of this proceeding.

SIGNED on this 28 day of September, 2007, at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE